CENTRAL IRON & METAL CO. *v.* SMITH.

APPEAL AND ERROR—EVIDENCE—ADMISSION OF PREJUDICIAL TESTI-
MONY HAVING NO BEARING ON ISSUE REVERSIBLE ERROR.

In action for damages for breach of contract, where issue was
as to whether contract had been changed by plaintiff after
execution by defendants, admission of testimony by former
employee of plaintiff, which had effect of thoroughly dis-
crediting its president before jury, but which had no bear-
ing whatever on issue, admitted after effort to impeach
witness was made by showing that he was discharged for
irregularities in his accounts, was reversible error.

Error to Kent; Dunham (Major L.), J. Sub-
mitted October 22, 1929. (Docket No. 36, Calendar
No. 34,502.) Decided December 3, 1929.

Assumpsit by the Central Iron & Metal Company,
an Illinois corporation, against Israel Smith and
Harry J. Smith, copartners, doing business as Smith
Bros. Iron & Metal Company, for breach of contract
for the furnishing of certain metal. From a verdict
and judgment for defendants, plaintiff brings error.
Reversed, and new trial granted.

*Linsey, Shivel & Phelps* and *Jackson, Fitzgerald
& Dalm,* for plaintiff.

*Benjamin T. Smith,* for defendants.

McDONALD, J. This action was brought to recover
damages for breach of contract. The contract, which
was in writing, provided for the sale to the plaintiff
of 200 gross tons of shoveling steel at $9.75 a ton
f. o. b. Grand Rapids, Michigan, to be delivered on

shipping instructions not later than January 1, 1925. The steel was not delivered. It is claimed that because of defendants' refusal to deliver according to contract it became necessary for the plaintiff to buy in the open market at an advanced price to fill orders from its customers, and that for the amount so purchased it was compelled to pay $1,286 above the price specified in the contract. To recover that amount this suit was brought. The plaintiff seems to think that delivery of the steel was refused because of the advance in price, but the defendants say that they did not sell the plaintiff any steel, that their agreement was to sell a quantity of old iron called Winnick iron then stored in a junk yard in the city of Grand Rapids, and that the words "shoveling steel" were written into the contract by the plaintiff after it was signed, and, for that reason, they refuse to recognize its validity. The issue thus raised was submitted to the jury, and the defendants received a verdict in their favor, on which judgment was entered. The plaintiff has brought error.

The principal error relied on relates to the admission of certain testimony on redirect-examination of George Sparberg, a witness for the defendants. He was employed by the plaintiff company and was present when the contract in question was made. On direct-examination he testified that the agreement was for the sale of Winnick iron and not for shoveling steel, that when the contract was reduced to writing the kind of material was not specified, that Mr. Smith signed it, and that the following morning, at the direction of Mr. Colitz, president of the plaintiff company, the stenographer wrote into the contract the words, "shoveling steel, suitable and acceptable to any customer." The witness was not in the employ of the company at the time of the trial.

On cross-examination, counsel for the plaintiff undertook to show that he left the company because of differences with Mr. Colitz over irregularities and shortages in his accounts. He was asked:

"*Q.* Isn't it true that some time in the summer of 1924 that you made a settlement with the Central Iron & Metal Company and signed a written agreement reciting your shortages and paid back to the Central Iron & Metal Company in the neighborhood of $3,500?

"*A.* Absolutely not."

For the purpose of impeachment, the agreement was offered and received in evidence and read to the jury. On redirect-examination he was asked:

"*Q.* Mr. Sparberg, can you tell us what are the matters in dispute talked about in that paper?

"*A.* Yes, sir. It is a long story. Shall I start from the beginning and tell the whole story?

"*The Court:* Answer the question the best way you can."

It was here the trouble began. Mr. Sparberg was a clever witness. He was very unfriendly to Mr. Colitz. He seemed more anxious to fasten some rascality on Colitz than to defend against the charges which had been made affecting his own honesty. Over constant objections from plaintiff's counsel, he repeatedly related to the jury the details of many business transactions between the plaintiff and other companies in which Mr. Colitz was held up to be wholly lacking in personal and business integrity. For instance, he testified to a business transaction that Mr. Colitz had with James S. Miller & Company. He said:

"James S. Miller & Company sent in a lot of billets, from iron billets, that called for hundreds and

hundreds of tons, sent them in for storage to the Central Iron & Metal Company and in the meantime James S. Miller died. The result was that everything was in a tangle, the company was thrown into bankruptcy, and the Central Iron & Metal Company took the stand there was no more billets there that belonged to James S. Miller. In order to get the matter smoothed out, so there would be no more billets—but there were billets there—Mr. Colitz took into his employ the secretary of the—or the secretary to James S. Miller who knew all about the transaction and kept him on his pay roll and had him working for him, and some of these letters sent to Mr. McKenna, he wrote as secretary of James S. Miller & Company, and of course then everything was squashed.''

There is nothing in this testimony which in any way tends to explain the charge of alleged shortages or irregularities with the plaintiff company. Its only effect was to show that Mr. Colitz defrauded the estate of James S. Miller out of hundreds of tons of iron by bribing the secretary to send false letters.

The witness further testified that the plaintiff bought 2,000 tons of stock at $80 a ton from the General Fibre Company, that inside of 30 days the market price dropped to $40 a ton, and to avoid the loss:

''They took and sent a man down to the Lincoln Paper Mills at Elkhart, Indiana, and they bribed the receiving clerk there to reject one of the cars.''

Here, again, Mr. Colitz was shown to have bribed a clerk in order to avoid liability in a transaction wholly foreign to any issue in this case.

We will not extend this opinion by reference to other portions of Mr. Sparberg's testimony. Much of it was highly improper. Mr. Colitz was a witness for the plaintiff company. He was its president and

active manager. He and Mr. Sparberg were the only witnesses on the question of whether the contract had been changed after it was signed. That was the only issue in the case. Colitz was thoroughly discredited before the jury by injecting matters that had no bearing whatever on any part of the controversy. If Sparberg had been allowed to explain the Einstein theory of relativity, it would have been just as material and much less harmful. Because of this error, the judgment is reversed and a new trial granted. Plaintiff will have costs.

NORTH, C. J., and FEAD, BUTZEL, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred.